UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| JONATHAN ZAMORANO,                )<br>                                                        )<br>                    Plaintiff,               )<br>                                                        )<br>          v.                                        )<br>                                                        )<br> MICHAEL J. ASTRUE,                  )<br>**Commissioner of the Social**       )<br>**Security Administration,**           )<br>                                                        )<br>                    Defendant.           )<br>_____) | Case  No. EDCV 08-01163 AJW<br><br>MEMORANDUM OF DECISION |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for supplemental security income ("SSI") benefits.  The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff filed his present application for SSI benefits on December 6, 2004.[1] [JS 2]. Plaintiff alleged

---

[1]     On March 8, 2001, plaintiff filed a prior SSI application, which was denied at the initial level of review.  Plaintiff did not seek reconsideration.  Plaintiff filed another SSI application on November 30, 2001.  A final administrative decision denying that application was issued on December 19, 2003, and that decision subsequently was affirmed by this court. [See Memorandum and  Order and Judgment filed October 26, 2005 in Zamorano v. Barnhart, EDCV 05-00119 AJW].

1   that he became disabled on December 20, 2003, the day after issuance of the prior, final administrative

2   decision finding him "not disabled." [JS 2; Administrative Record ("AR") 11-12].

3      In a written hearing decision that constitutes the final decision of the Commissioner in this case, an

4   administrative law judge ("ALJ") found that plaintiff had severe impairments consisting of a depressive

5   disorder, not otherwise specified ("NOS"), and a dependent personality disorder. [AR 14]. The ALJ further

6   found that plaintiff's impairments left him with a residual functional capacity ("RFC") for work at any

7   exertional level, with nonexertional impairments restricting him to

8          moderately complex tasks with four to five steps in a habituated work setting that is object

9          oriented.  The claimant is precluded from safety operations and aggressive supervision.  His

10         environment should be low stress with no high production quota work or rapid assembly line

11         work.  His work environment should not have significant changes from day to day.

12  [AR 14]. At step four of the sequential evaluation, the ALJ determined that plaintiff's RFC did not preclude

13  him from performing his past relevant work as a "yard person and as a carpet cleaner." [AR 21].

14  Alternatively, the ALJ found, at step five of the sequential evaluation, that plaintiff can perform other jobs

15  that exist in significant numbers in the national economy. [See AR 21]. The ALJ concluded that plaintiff

16  was not disabled from December 20, 2003 through the date of his decision.

17                              **Statement of Disputed Issues**

18      The disputed issues are whether the ALJ properly considered (1) the state agency physician's findings

19  regarding plaintiff's moderate limitations; (2) the treating clinician's opinions regarding plaintiff's severe

20  dysfunction rating; and (3) the type, dosage, and side effects of plaintiff's prescribed medications; and (4)

21  whether the ALJ posed a complete hypothetical question to the vocational expert. [JS 2-3].

22                                 **Standard of Review**

23      The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial

24  evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir.

25  2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  "Substantial evidence" means "more than

26  a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir.

27  2005).  "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

28  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is

required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Presumption of continuing nondisability**

As a preliminary matter, the ALJ properly invoked the doctrine of res judicata with respect to the period through December 19, 2003, the date of the prior, final administrative decision denying benefits. [AR 11-12]. See Lester v. Chater, 81 F.3d 821, 827 (9th Cir. 1995) (holding that res judicata barred reconsideration of claim for period with respect to which a final determination had already been made); Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1988) (noting that the principles of res judicata apply to administrative decisions). A final, binding determination of nondisability also gives rise to a presumption that the claimant continued to be able to work after the date of that determination. See Lester, 81 F.3d at 827; Lyle v. Sec'y of Health & Human Srvs., 700 F.2d 566, 567 (9th Cir. 1983). The presumption of continuing nondisability may be overcome by a showing of "changed circumstances," by new facts establishing a previously unlitigated impairment, or where the claimant's unrepresented status has resulted in an inadequate record. See Lester, 81 F.3d at 827-828; Chavez, 844 F.2d at 693.

**State agency physician's findings**

Plaintiff contends that the ALJ misstated, and failed properly to consider, a nonexamining state agency physician's findings that plaintiff is moderately limited in certain work-related mental functional abilities. [See JS 3-7].

Where the opinion of a treating or examining physician is uncontroverted, the ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting it. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan v. Halter, 242 F.3d 1144, 1148-49 (9th Cir. 2001); Lester, 81

1   F.3d at 830-831.

2        A nonexamining physician does not have the opportunity to conduct an independent examination

3   and does not have a treatment relationship with the claimant, and therefore a nonexamining source opinion

4   ordinarily carries less weight than that of an examining or treating physician. Andrews v. Shalala, 53 F.3d

5   1035, 1040-41 (9th Cir. 1995)(explaining that more weight is given to the opinions of treating and

6   examining physicians because they have a greater opportunity to know and observe the patient as an

7   individual). Standing alone, the opinion of a nonexamining physician cannot constitute substantial evidence

8   that justifies the rejection of the opinion of either an examining physician or a treating physician. Morgan,

9   169 F.3d at 602; Lester, 81 F.3d at 831-823. When supported by other evidence in the record, however, the

10  opinion of a nonexamining physician may serve as substantial evidence. Andrews, 53 F.3d at 1041;

11  Magallanes v. Bowen, 881 F.2d 747, 752 (9th Cir. 1989).

12       In a June 15, 2005 mental residual functional capacity assessment, a nonexamining state agency

13  psychiatrist rated plaintiff as "moderately limited" in his ability to understand, remember, and carry out

14  detailed instructions, and interact appropriately with the general public. [AR 251-252]. Plaintiff was "not

15  significantly limited" in the seventeen remaining functional abilities listed on the form. The state agency

16  psychiatrist concluded that plaintiff could sustain simple repetitive tasks and can relate appropriately to

17  superiors and co-workers, but not to the general public. [AR 253].

18       The ALJ did not err in adopting the conflicting opinion of Dr. Glassmire, a medical expert who

19  testified during the hearing before the ALJ. Because Dr. Glassmire and the state agency physician were both

20  nonexamining sources, the ALJ was entitled resolve the conflict between those conflicting opinions. In

21  making his determination that plaintiff has the RFC to perform such work, the ALJ carefully considered all

22  the evidence, including plaintiff's testimony about his daily activities, the medical expert testimony, medical

23  records from Arrowhead Regional Medical Center and the San Bernardino County Department of Behavioral

24  Health ("County Behavioral Health"), the consultative psychiatric examination by Dr. De Silva, the

25  evaluation by Dr. Khin, examination notes by Ms. Rosales and Ms. Clinch, a questionnaire completed by

26  plaintiff's father, and two state agency reviewing psychiatrists' opinions. [AR 14-20].

27       Although Dr. Glassmire did not examine plaintiff, his opinion is substantial evidence since it is

28  supported by, and consistent with, other evidence in the record. [AR 14-15, 372-374]. See Morgan, 169 F.3d

at 600 ("Opinions of a nonexamining, testifying medical advisor may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it.").  The ALJ permissibly concluded that Dr. Glassmire's opinion was consistent with the evidence as a whole. For example, the ALJ pointed out that plaintiff had admitted on at least one occasion to exaggerating his symptoms of depression, and that although plaintiff claimed to have "great difficulty" leaving home, he regularly attended appointments, attended community college classes, visited friends, and worked in his father's carpet cleaning business. [AR 17, 19, 235, 317]. Plaintiff testified that had begun a 9-month course to become a massage therapist, which entailed attending classes at United Education Institute five hours per day, four days per week, with a few additional hours per week for homework. Previously, he had attended a community college, taking classes in life drawing and aviation classes for a pilot's license. He also said that he worked for his father in a carpet-cleaning business a dozen or so times a month, earning about $150 in total.  [AR 14-15, 359-360, 364-365]. The ALJ also noted that medical records from Arrowhead Regional Medical Center show plaintiff has no severe physical impairments.  [AR 15, 288-293].  Finally, the ALJ noted that the state agency physician,  who had also reviewed plaintiff's file, initially concluded that plaintiff's condition was not severe and that he had no limitations in activities of daily living and no episodes of decompensation. [AR 19, 212-225].  [AR 14-20].

Since the opinions of the nonexamining physicians conflicted, the ALJ did not err when, after considering the state agency findings, he chose instead to adopt the opinion of Dr. Glassmire.

**Social worker's opinion**

Plaintiff contends that the ALJ erred in failing to consider a "severe dysfunction rating" by Diane Waters, M.S.W., a County Behavioral Health social worker, as well as her observation that plaintiff complained "that he cannot maintain a job." [JS 7-8].

Evidence from an "acceptable medical source" is required to establish the existence of a "medically determinable impairment," that is, an impairment that can serve as the basis for a finding of severity or disability.  See 20 C.F.R. §§404.1513(a), 416.913(a). Unlike a licensed physician or psychologist, a social worker is not an "acceptable medical source" whose findings can establish the existence of a medically determinable impairment.  A social worker falls into the category of "other sources."  See 20 C.F.R. §§ 404.1513(d), 416.913(d).  The ALJ "may also use" information in the record from "other sources" "to show

5

the severity" (but not the existence) of a claimant's medically determinable impairments and how those impairments affect the ability to work  20 C.F.R. §§ 404.1513(d), 416.913(d).  The ALJ, however, is not required to give that information the same weight as information from an acceptable medical source.  See Gomez v. Chater, 74 F.3d 967, 970-971 (9th Cir.) (explaining that opinions from "other sources" may be given less weight than those from "acceptable medical sources" under the governing regulations), cert. denied, 519 U.S. 881 (1996); see also SSR 06-03p.

Ms. Waters conducted a clinical assessment of plaintiff on December 10, 2001.  [AR 193-197]. Plaintiff, aged 30, stated that he lived with his parents and siblings.  He said that he was "unable to work." [AR 193].  He complained of a depressed mood, isolation, insomnia, low energy, and feelings of worthlessness and guilt.  He reported an incident when he became angry with his family's demands and broke some things in the house, but denied having other similar outbursts. [AR 193].

Ms. Waters noted plaintiff's responses to questions regarding his medical history, his employment history, any cultural or sexual issues of concern, and his mental state. [AR 196].  In assessing plaintiff's mental status, Ms. Waters found that plaintiff was fully oriented and of average intellectual functioning. [AR 196].  Plaintiff's insight was poor; when asked about his biggest difficulty, plaintiff responded, "I don't know." [AR 196].   Plaintiff reported that he was always angry as a child, but said he was not angry at present.  He sometimes was nervous. [AR 196].   Ms. Waters found that plaintiff did not have any current health conditions that would place him at special risk, and that he was not a suicide risk. [AR 197].  In explaining why she concluded that plaintiff had a "severe" dysfunction, Ms. Waters wrote, "Client states he has been unable to maintain a job." [AR 197].

Although the ALJ did not identify Ms. Waters by name, he reviewed and summarized in some detail the County Behavioral Health treatment records, including findings similar to those of Ms. Waters made by other County Behavioral Health clinicians. [AR 15-17].  See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (stating that "in interpreting the evidence and developing the record, the ALJ does not need to 'discuss every piece of evidence'")(quoting Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998)).  Ms. Waters indicated that her finding that plaintiff had a "severe" dysfunction was based primarily, if not solely, on plaintiff's subjective assertion that he was unable to maintain a job.  Accordingly, the ALJ was not required to accept Ms. Waters's opinion because she is not an acceptable medical source, and she

1   did not support her conclusion with anything other than plaintiff's subjective self-assessment.

2       Plaintiff's reliance on Benton ex rel. Benton v. Barnhart, 331 F.3d 1030 (9th Cir. 1996) is misplaced.

3   Plaintiff cites Benton to support the contention that Ms. Waters's evaluation qualified as the opinion of a

4   treating source. [See JS 7].   Benton held that under certain circumstances, a doctor who supervises a

5   treatment team can qualify as a "treating source" even if the supervising doctor saw the claimant only once.

6   Benton, 331 F.3d at 1040-1041. There is no indication that Ms. Waters's December 2001 assessment can

7   be attributed to a supervising physician who qualifies as a treating source, or that her opinion otherwise

8   should be deemed a treating source opinion under Benton. Accordingly, the ALJ did not error in failing

9   specifically to discuss Ms. Waters's assessment in his opinion.

10       **Type, dosage, and side effects of prescribed medications**

11       Plaintiff contends that the ALJ did not properly consider treatment reports from Harry Khin, M.D.,

12   regarding the type, dosage, and side effects of plaintiff's prescribed medications between May 2005 and

13   January 2006. [JS 10-14].

14       Dr. Khin was County Behavioral Health psychiatrist who prescribed antidepressant medications for

15   plaintiff in 2005 and 2006. [AR 295-354]. Plaintiff points out that after starting plaintiff on Cymbalta,

16   Wellbutrin, and Lamictal, he increased the dosage of each of those medications.  Dr. Khin "increased the

17   prescribed dosage of Cymbalta to 60 [milligrams]" in May 2005. [JS 10]. While that dosage may have been

18   an increase from plaintiff's starting dosage of Cymbalta in February 2005, Dr. Khin's medication log

19   indicates that plaintiff was maintained on the 60 milligram dosage through the last date on the medication

20   log, May 16, 2006. [AR 294-297]. Dr. Khin increased plaintiff's prescribed dosage of Wellbutrin from 100

21   milligrams in August 2005, when that medication was added, to 300 milligrams in October 2005, and

22   plaintiff then was maintained on the higher dosage. [AR 294-296].  Dr. Khin noted that he gave plaintiff a

23   "starter package" for the drug Lamictal on November 29, 2005, increased the dosage of Lamictal to 100

24   milligrams on January 24, 2006, and then maintained plaintiff on that dosage. [AR 294-295].

25       The ALJ must consider all factors that might have a "significant impact on an individual's ability to

26   work," including any side effects from medication. Erickson v. Shalala, 9 F.3d 813, 817-818 (9th Cir.

27   1993)(quoting Varney v. Sec'y of Health & Human Srvs., 846 F.2d 581, 585 (9th Cir. 1988), relief modified,

28   859 F.2d 1396 (1988)).  Plaintiff, however, has not met his burden to show that the use of medications

1   prevented him from performing his past relevant work. Dr. Khin's notations about plaintiff's medications

2   say nothing about side effects or plaintiff's functional abilities while on prescribed medications. There is

3   no evidence in the record of medication side effects that affected plaintiff's ability to work to a degree

4   greater than reflected in the ALJ's RFC assessment. Dr. Khin's progress notes give no indication of any

5   significant change in plaintiff's level of functioning on the dates his medication dosage was increased. [See

6   AR 269, 273, 327]. Plaintiff fails to provide any evidence to support the inference that his increased

7   medication dosages show that his condition was materially deteriorating or was disabling. When asked by

8   his attorney during the hearing whether his symptoms "have gotten worse over time, better over time, or

9   about the same in the last three years compared to before," plaintiff testified, "I think I've gotten a little bit

10  better." [AR 365].

11      The ALJ discussed evidence concerning plaintiff's medication usage and pointed to evidence that

12  plaintiff responded well to his prescribed medications, such as indications that his symptoms of depression

13  increased when he was out of medication. [AR 19, 176]. For these reasons, plaintiff's contention that the

14  ALJ erred in evaluating the type, dosage, and side effects of plaintiff's prescription medication lacks merit.

15      **Hypothetical question**

16      Plaintiff contends that the ALJ posed an incomplete hypothetical question to the vocational expert

17  because it omitted the moderate limitations described by the nonexamining state agency physician. [See JS

18  14-17].

19      Hypothetical questions posed to the vocational expert must accurately describe all of the limitations

20  and restrictions of claimant that are supported by the record. Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir.

21  1999); Matthews v. Shalala, 10 F.3d 678, 681 (9th Cir. 1993). If an ALJ's hypothetical question does not

22  reflect all of the claimant's limitations that are supported by the record, the vocational expert's testimony

23  does not constitute substantial evidence supporting a finding that the claimant can perform alternative jobs

24  in the national economy. Matthews, 10 F.3d at 681; Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988).

25      For the reasons described above, the ALJ did not commit legal error in evaluating the nonexamining

26  state agency physician's findings, the social worker's opinion, or the evidence regarding medication

27  prescribed by Dr. Khin. Therefore, the omission from the ALJ's hypothetical question of the findings and

28  conclusions of those sources was not error.

1

**Conclusion**

2      The Commissioner's decision is supported by substantial evidence and is free of legal error.

3  Accordingly, the Commissioner's decision is **affirmed.**

4  **IT IS SO ORDERED.**

5

6  DATED:June 15, 2009

7                                                  _____

8                                           ANDREW J. WISTRICH
                                          United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28